C. G. Merrill v. Commissioner.
C. G. Merrill v. Commissioner
Docket No. 13359.
United States Tax Court
1948 Tax Ct. Memo LEXIS 139; 7 T.C.M. (CCH) 501; T.C.M. (RIA) 48133; July 9, 1948
Jordan M. Work, Esq., Phoenix Bldg., Ottumwa, Ia., for the petitioner. George E. Gibson, Esq., for the respondent. HARLAN Memorandum Findings of Fact and Opinion HARLAN, Judge: The Commissioner determined deficiencies of $235.55 and $225 in petitioner's income tax liability for the years 1943 and 1944, respectively. We are presented with two questions: (1) Whether petitioner realized taxable income from dividends in the amounts of $720, $810, and $900 paid in 1942, 1943, and 1944, respectively, by The Union Bank & Trust Company on 90 shares of its capital stock issued *140 in petitioner's name and held by a trustee to secure a promissory note on which petitioner was a co-maker, the said dividends having been received by the trustee and applied in payment on the said note. (2) In the alternative, if the dividends are held to be taxable income of the petitioner, is petitioner entitled to offsetting losses in equal amounts? Findings of Fact A stipulation of facts has been filed herein which we adopt with the exception of any conclusions of law that may be included with the stipulated facts. The petitioner is an individual residing in Ottumwa, Iowa, and filed the returns involved with the collector of internal revenue for the district of Iowa. In 1931, the petitioner was a stockholder and director of the Iowa National Bank of Ottumwa, Iowa, referred to herein as the Old Bank. On February 2, 1931, four banks of Ottumwa, including the Old Bank, entered into an agreement to merge into one bank to be known as The Union Bank & Trust Company of Ottumwa, Iowa. This bank will be referred to as the New Bank. The agreement provided that it should be opened July 11, 1931, and by the agreement the New Bank was to assume the deposit liabilities of the Old *141 Bank and the Old Bank was to turn over to the New Bank good assets equal in value to the deposits. The Old Bank was also to contribute $150,000 in good assets to the capital of the New Bank. Shares of stock in the New Bank were to be issued to shareholders in the Old Bank on the basis of one share of the New Bank for two shares of the Old Bank. The stockholders of the Old Bank were to retain for themselves any assets in that bank in excess of those required to be turned over at the time of the merger. On July 10, 1931, it became known for the first time that the cashier of the Old Bank had embezzled approximately $100,000, with only $10,000 thereof covered by insurance. A meeting of the stockholders being impossible on such short notice, the board of directors of the Old Bank immediately adopted a resolution, the relevant parts of which recited: "* * * whereas, a majority of the members of the board of directors of the Iowa National Bank have or are about to execute their note for said sum, payable to the Iowa National Bank of Ottumwa, Iowa, to cover the losses sustained by reason of the acts and/or omissions of said Carl F. Rauscher; and are about to execute their written Guarantee *142 in favor of the Union Bank and Trust Company, of Ottumwa, Iowa, by which they agree to execute any additional note or notes required; "Now, Therefore, Be It Resolved by the board of directors of the Iowa National Bank, of Ottumwa, Iowa, that the said Union Bank and Trust Company, of Ottumwa, Iowa, when it shall issue shares of its capital stock as provided by the said agreement of the 2nd day of February, 1931, shall issue five shares each to Cyrus K. Blake; W. T. Harper, Edwin C. Manning and C. G. Merrill, in order that they may qualify as members of the board of directors of the Union Bank and Trust Company, and that the remaining shares to which the stockholders of the Iowa National Bank would be entitled under said agreement of the 2nd day of February, 1931, to-wit, nine hundred and eighty shares, be issued to the Iowa National Bank of Ottumwa, Iowa, as Trustee for the owners and holders of the issued capital stock of the Iowa National Bank, of Ottumwa, Iowa. "Be It Further Resolved that such nine hundred eighty shares of the capital stock of the Union Bank and Trust Company shall be held by the Iowa National Bank, of Ottumwa, Iowa, as security in favor of the signers of the *143 promissory note herein referred to, and of the written Guarantee hereinbefore referred to." Six of the seven members of the board of directors of the Old Bank, including the petitioner herein, jointly and severally, signed a promissory note dated July 10, 1931, in the amount of $90,000 payable to the order of the Iowa National Bank (the Old Bank). This note was delivered to the Old Bank and by it delivered without endorsement to the New Bank on July 10, 1931. Thereupon the merger was completed and the New Bank opened for business on July 11, 1931. Since that date the Old Bank has existed only for the purpose of liquidation and petitioner has sometimes acted as trustee in liquidation. On August 20, 1931, a special meeting of the stockholders of the Old Bank was held at which a resolution was adopted the material parts of which recite: "* * * WHEREAS, in order to carry out the said agreement of the 2nd day of February, 1931, the following six members of the Board of Directors of the Iowa National Bank, to-wit, Cyrus K. Blake, H. W. Merrill, C. S. Harper, W. T. Harper, C. G. Merrill and Edwin Manning, signed, executed and delivered to the Iowa National Bank their promissory note *144 for the principal sum of Ninety Thousand ($90,000.00) Dollars, payable to the said Iowa National Bank; * * *
"THEREFORE, BE IT RESOLVED BY THE STOCKHOLDERS OF THE IOWA NATIONAL BANK, OF OTTUMWA, IOWA: "That the one thousand (1,000) shares of the capital stock of the Union Bank and Trust Company, of Ottumwa, Iowa, to which the individual stockholders of said Iowa National Bank are and will be entitled under the terms of the said Agreement of the 2nd day of February, 1931, shall be and are hereby pledged as collateral security in favor of the Union Bank and Trust Company, of Ottumwa, Iowa, for the performance by the said Iowa National Bank of the things required of it under the said Agreement of the 2nd day of February, 1931; and also and thereafter as collateral security or indemnity in favor of the six members of the Board of Directors of the said Iowa National Bank, on account of the liability of said six directors, and each of them, assumed in connection with the execution of the note for $90,000.00 hereinbefore referred to, and in connection with the execution of the written guarantee executed by said six directors; the said one thousand (1,000) shares to be liable pro *145 rata for the performance by the said Iowa National Bank of the things required of it under the said Agreement of the 2nd day of February, 1931, and for the liability assumed by the said six members of the Board of Directors of the said Iowa National Bank." The resolution then provided that 20 shares of the stock in the New Bank should be issued directly to certain individuals so that they could qualify as members of its board of directors, and provided: "* * * that the remaining nine hundred and eighty (980) shares of the capital stock of the said Union Bank & Trust Company be issued to the individual stockholders of the said Iowa National Bank entitled to receive the same, and that such certificates for said nine hundred and eighty (980) shares of the capital stock of the Union Bank and Trust Company be delivered to the Iowa National Bank, of Ottumwa, Iowa, as agent for the said Union Bank and Trust Company, and for the said six members of the Board of Directors of the said Iowa National Bank; such nine hundred and eighty (980) shares of the capital stock of the Union Bank and Trust Company to be held by the said Iowa National Bank for the benefit of the said Union Bank and Trust *146 Company, and of the said six members of the Board of Directors of the Iowa National Bank, and each of them, and all as hereinbefore set out. "BE IT FURTHER RESOLVED that any dividends paid upon the one thousand (1,000) shares of the capital stock of the said Union Bank and Trust Company, shall be applied in payment of interest and principal accruing upon said note for $90,000.00, and upon any renewal or renewals of such note, or upon any note for a smaller sum in case of the payment of any of the principal of such note or of any renewal or renewals of such note. "BE IT FURTHER RESOLVED that after the performance in full by the Iowa National Bank of all the things required of it under the said Agreement of the 2nd day of February, 1931, and after the payment in full of the liability assumed by the said six members of the Board of Directors of the Iowa National Bank, then the said shares of the capital stock of the said Union Bank and Trust Company, and the certificates representing the same, to be delivered to the said Iowa National Bank as aforesaid, shall be delivered to the persons entitled to receive the same." A total of 1,000 shares of stock in the New Bank were issued in *147 the names of the stockholders of the Old Bank, 70 shares being issued in the name of the petitioner, and all 1,000 shares were delivered to the Old Bank as trustee. Petitioner later purchased 20 additional shares, making a total of 90 shares issued in his name. The New Bank continued to hold the $90,000 note for about three years after July 11, 1931, at which time the bank examiners required that it be removed from the assets of the New Bank. Thereupon H. W. Merrill paid the balance due on said note, which amounted to approximately $55,000, and the note was delivered without endorsement by the New Bank to H. W. Merrill, a relative of the petitioner herein. Thereafter payments on the note were made by the Old Bank to H. W. Merrill or to his estate. Some of the money realized from the assets of the Old Bank was applied by the liquidating trustee to this note. On February 15, 1945, a liquidating dividend of $7.06 per share was paid to the stockholders of the Old Bank in final liquidation. The note itself was finally paid in full on July 1, 1947, at which time the petitioner received from the trustee, the Old Bank, a certificate for the 90 shares of stock which had been issued in his *148 name. Some of the signers of the note had received their stock from the trustee prior to July 1, 1947, by paying their proportionate share of the amount due on the note. During the years 1942, 1943 and 1944 the 90 shares issued in the name of petitioner were held by the Old Bank as trustee. The New Bank paid dividends on said shares as follows: Year
Amount
1942
$720.00
1943
810.00
1944
900.00 These dividends were received from the New Bank by the Old Bank, as trustee, and were applied on the note. In his notice of deficiency the Commissioner included in petitioner's income for the years 1942, 1943, and 1944 the dividends paid on the 90 shares of stock issued in his name in the respective amounts of $720, $810 and $900. The petitioner realized taxable income from dividends paid on the 90 shares of stock in 1942, 1943, and 1944 in the amounts of $720, $810, and $900, respectively. Opinion In clarification of the issue in this case, it should be borne in mind that we are not dealing with dividends payable to stockholders who did not sign the note involved; we are not concerned with any "written guarantee in favor of the Union Bank & Trust Company" which *149 the directors, by resolution, agreed to execute but concerning which there is no evidence; and we are not dealing with the stock certificates themselves which were pledged as security. We are dealing with a promissory note signed jointly and severally by the taxpayer and five other individuals payable to the Old Bank; and we are also dealing with an agreement by the taxpayer as a stockholder that the dividends payable to him on his stock in the New Bank should be applied by the Old Bank to his obligation on the note to the Old Bank. The taxpayer was primarily liable to the Old Bank on the note payable to it which he signed as a maker. Section 541.193 of the Code of Iowa, 1946, provides: "The person 'primarily' liable on an instrument is the person who by the terms of the instrument is absolutely required to pay the same. All other persons are 'secondarily' liable." The fact that this note was handed over to the New Bank by the Old Bank without endorsement and that payments were made on said note by the Old Bank out of money realized from the sale of the bank assets which otherwise would have been paid to the stockholders of the bank; or that the note was subsequently delivered *150 to one of the makers who paid the balance due thereon, does not affect the primary liability of the taxpayer on the note. When the taxpayer as a stockholder directed that "any dividends paid upon * * * the capital stock of the said Union Bank & Trust Company, shall be applied * * * upon said note," the New Bank, in following these instructions, did so as his agent as fully and effectively as though the dividends had been paid to him and he in turn had applied the dividends on the debt. He constructively received the dividends. See Douglas v. Willcuts, 296 U.S. 1; Raybestos-Manhattan, Inc., v. United States, 296 U.S. 60. As to the allowance of a deduction from income to the taxpayer of an amount equal to the dividends which he received in the taxable year and which were applied on his note, we should bear in mind that the original embezzlement occurred in 1931, not in any taxable year involved herein, and that the Old Bank was victimized, not the taxpayer. There is no evidence of any loss occurring to the taxpayer or the bank during any of the taxable years before us. The loss is not deductible under any provision of section 23 (e), I.R.C. *151 which provides for losses by individuals. See Park, Executor, v. Commissioner, 58 Fed. (2d) 965, certiorari denied 287 U.S. 645; and B. Estes Vaughan, 17 B.T.A. 620. Decision will be entered for the respondent.